CONSOLIDATED CONSTRUCTION,
INC., a Wyoming Corporation,
Appellant (Defendant),

v.

Barbara SMITH d/b/a Hometown
Builders, Appellee (Plaintiff).

No. 5482.

Supreme Court of Wyoming.

Oct. 7, 1981.

George A. Zunker of Urbigkit & White-
head, P.C., Cheyenne, for appellant.

John C. Patton of Carmichael, McNiff &
Patton, Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOM-
AS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Consolidated Construction, Inc., a Wyo-
ming corporation, appeals from a decision
of the district court which dismissed its
counterclaim against appellee Hometown
Builders, while granting Hometown Build-
ers a judgment for a claim based on quan-
tum meruit filed against appellant.  As a
result of the adverse decision below, the

appellant now raises one basic issue for our consideration: Did the trial court err as a matter of law by applying § 1–12–102, W.S. 1977,[1] to the facts of this case?

For the reasons discussed below we deem the trial court correct and will affirm its decision.

## FACTS

On or about April 27, 1979, Frank Smith, a partner in the appellee partnership, entered into an oral agreement with a Mr. M. V. Federer, president of appellant Consolidated Construction, Inc., for the purpose of completing the framing aspect of a condominium construction project. Under the terms of the agreement, Mr. Smith was to be paid on a square-footage basis as each of the buildings was completed. Mr. Smith's wife and partner, Barbara Smith, was unaware of the terms of the oral agreement.

Soon after construction began, problems arose due to Mr. Smith's excessive drinking and a lack of diligence on his part and that of his crew. Mr. Federer made numerous attempts to improve the situation, but to no avail. Mr. Smith had been separated from his wife about this time and had been heard to say that there was no further interest for him in this life. Sometime in early June of 1979 he committed suicide.

Due to these problems, Consolidated was forced to have other parties complete the project.

In the process of winding up the partnership affairs, Mrs. Smith brought an action on behalf of Hometown Builders to recover in quantum meruit for the services performed by her husband and crew up until his death. Consolidated filed a counterclaim in this suit which alleged that Hometown's breach of the oral agreement had caused it to pay approximately $9,000 more for the framing of the condominiums than it would have had to pay had Smith performed under the contract.

The case was tried without a jury, and on January 27, 1981, the trial judge issued a letter opinion which granted Hometown's claim and denied Consolidated's counterclaim on the ground that it failed to produce the corroboration of evidence as is required under § 1–12–102, W.S.1977. From this decision Consolidated appeals.

## APPLICABILITY OF § 1–12–102, W.S.1977

In his letter opinion of January 27, 1981, the trial judge determined that § 1–12–102, W.S.1977, applied to Consolidated's counterclaim against Hometown Builders, a partnership. In reaching this decision the trial judge concluded that the definition of "person" found in § 8–1–102(a)(vi), W.S.1977 (1978 Replacement), was applicable to § 1–12–102. The appellant feels that this determination constitutes error as a matter of law. We will address his specific arguments along with our conclusions below.

Section 1–12–102 embodies what is commonly referred to as Wyoming's "dead man's statute," and provides:

"In an action or suit by or against a *person* who from any cause is incapable of testifying, or by or against a trustee, executor, administrator, heir or other representative of the person incapable of testifying, no judgment or decree *founded on uncorroborated testimony* shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his trustee, executor, administrator, heir or other representative. In any such action or suit, if the adverse party testifies, all entries, memorandum and declarations by the party incapable of testifying made while he was capable, relevant to the matter in issue, may be received in evidence." (Emphasis added.)

Appellant claims that the statute was only intended to apply to actions against a person in the singular and that since this case involved a claim against a partnership the trial judge erred in applying its terms through reference to the definition of "person" found in § 8–1–102(a)(vi), supra. Consolidated bases this claim on language from

---

1. Section 1–12–102, W.S.1977, embodies what is commonly referred to as the "dead man's statute." See infra, p. 2 of this opinion.

our decision in *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981). There we said that

"* * * legislative rules for the construction of statutes are no more than that, and, as expressed by the foregoing section, are not to be applied when 'plainly contrary to the intent of the legislature.'" 623 P.2d at 1184.

Basically, the appellant is claiming that the language of § 1–12–102 is plain and unambiguous and that the legislature intended "person" in that statute to mean a single individual. He justifies this conclusion on a well-recognized rule of this court that where a statute is plain and unambiguous, we cannot go beyond its terms to give it an unintended effect. *Oroz v. Hayes*, Wyo., 598 P.2d 432, 434 (1979); *LoSasso v. Braun*, Wyo., 386 P.2d 630 (1963). Thus, in the appellant's opinion, the legislature clearly meant the word "person" in § 1–12–102 to mean just that, a person.

■ We, on the other hand, cannot agree with the appellant's position. When examining § 1–12–102 in conjunction with § 8–1–102(a)(vi), we are able to see why the trial court applied these together. Section 8–1–102(a)(vi) provides:

"(a) As used in the statutes *unless the legislature clearly specifies a different meaning or interpretation or the context clearly requires a different meaning:*

    \*      \*      \*      \*      \*      \*

"(vi) *'Person' includes an individual, partnership, corporation, joint stock company or any other association or entity, public or private*; * * * " (Emphasis added.)

This section was designed to provide a general definition of the term "person" to be applied to all of the Wyoming statutes "unless the legislature clearly specifies a different meaning or interpretation or the context clearly requires a different meaning." When we read this quoted passage, which we might add is also clear and unambiguous, the obvious intent of the legislature was to have the definition of "person" apply unless the legislature superseded its application with specific language, or the context of the specific statutory provision requires a different meaning. Clearly the legislature did not specify otherwise with the language it used in § 1–12–102, nor, in our opinion, does the context specify otherwise. We have no trouble envisioning that the protections afforded by § 1–12–102 are applicable to a partnership as well as an individual. The facts of this case bear this point out, especially where one partner is unaware of the terms of an agreement made by a partner later deceased. To us, the construction given by the lower court to § 1–12–102 follows the rules of construction discussed above to the letter. Here the language of both statutes is clear and unambiguous and as such we must reference § 1–12–102 to the definition of § 8–1–102(a)(vi), for that was the clear intent of the legislature. Thus, we hold that the word "person" utilized in § 1–12–102 must be defined with reference to § 8–1–102(a)(vi). The trial court was correct in applying the Wyoming "dead man's statute" in this case.

Appellant has also raised a somewhat collateral issue by claiming that Rule 601, W.R.E., which deals with the competency of witnesses, supersedes § 1–12–102. Even though we do not feel this claim is meritorious, we will address it.

■ Rule 601, W.R.E., states:

"Every person is competent to be a witness except as otherwise provided in these rules."

Appellant claims that since § 1–12–102, in his view, makes an "adverse party" of a deceased person incompetent, Rule 601 has now superseded the "dead man's statute." With this contention we cannot agree. In our view § 1–12–102 does not make the "adverse party" an incompetent witness, for clearly under the terms of the statute the "adverse party" is free to testify. Rather than forbidding the testimony of one having a claim against the deceased, the statute merely requires that such testimony cannot be the basis of a judgment unless it is corroborated. See language of

§ 1–12–102, supra. The appellant's argument would be tenable under the old version of our "dead man's statute," § 1–140, W.S.1957,[2] because clearly that statute was designed to bar totally the testimony of one having a claim against a deceased. In that situation it is possible to argue that the rules of evidence now govern competency and that the intention of a statute like the 1957 version of the "dead man's statute" has been superseded. However, as we have already noted, § 1–12–102 is not geared toward barring testimony. As McCormick notes, "A few states have provided that the survivor may testify, but his testimony will not support a judgment, unless corroborated by other evidence. * * *" McCormick on Evidence, § 65, p. 143 (2nd Ed. 1972).[3] This type of "dead man's statute," like our § 1–12–102, was enacted in response to the heavy criticism surrounding the old statutes which barred the adverse parties' testimony. McCormick, supra at § 65. We have determined that Rule 601, W.R.E., has not superseded § 1–12–102.

Further support of our conclusion is evidenced by Rule 1102, W.R.E. This rule provides:

"From and after the effective date of these rules, the sections of the Wyoming Statutes, 1957, as amended and recodified in ch. 188, S.L. Wyo. 1977, hereinafter enumerated, shall be superseded, and such statutes and all other laws in conflict with these rules shall be of no further force or effect:

"§ 1–12–101, W.S. recodified § 1–138, W.S. 1957

"§ 1–12–106, W.S. recodified § 1–143, W.S. 1957

"§ 1–12–201, W.S. recodified § 1–160, W.S. 1957

"§ 1–12–202, W.S. recodified § 1–161, W.S. 1957

"§ 1–12–203, W.S. recodified § 1–162, W.S. 1957

"§§ 1–12–301—1–12–303, W.S. recodified §§ 1–165—1–169, W.S. 1957

"§§ 1–12–401—1–12–402, W.S. recodified §§ 1–170—1–173, W.S. 1957

**2.** Section 1–140, W.S.1957, provided:

"A party shall not testify where the adverse party is the guardian or trustee of either a deaf and dumb or an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee or legatee of a deceased person, except:

"1. To facts which occurred subsequent to the appointment of the guardian or trustee of an insane person, and, in other cases, subsequent to the time the decedent, grantor, assignor or testator died;

"2. When the action or proceeding relates to a contract made through an agent, by a person since deceased, and the agent testifies, a party may testify on the same subject;

"3. If a party, or one having a direct interest, testify to transactions or conversations with another party, the latter may testify as to the same transactions or conversations;

"4. If a party offer evidence of conversations or admissions of the opposite party, the latter may testify concerning the same conversations or admissions;

"5. In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since deceased, unless the same were made in the presence of the surviving partner or joint contractor; and this rule shall be applied without regard to the character in which the parties sue or are sued;

"6. If the claim or defense is founded on a book account a party may testify that the book is his account book, that it is a book of original entries, that the entries therein were made by himself, a person since deceased, or a disinterested person non-resident of the county; whereupon the book shall be competent evidence; and such book may be admitted in evidence in any case, without regard to the parties, upon like proof by any competent witness;

"7. If a party, after testifying orally, die, the evidence may be proved by either party, on a further trial of the case; whereupon the opposite party may testify as to the same matters;

"8. If a party die, and his deposition be offered in evidence, the opposite party may testify as to all competent matters therein. "Nothing in this section contained shall apply to actions for causing death, or actions or proceedings involving the validity of a deed, will or codicil; and when a case is plainly within the reason and the spirit of the last three sections, and though not within the strict letter, their principles shall be applied."

**3.** For a thorough discussion of "dead man's statutes" in general see: Ray, Dead Man's Statutes, 24 Ohio St. L.J. 89 (1963).

"§§ 1–12–501—1–12–502, W.S. recodified §§ 1–174—1–177, W.S. 1957

"§ 1–12–103, W.S. recodified § 1–140, W.S. 1957 and is not superseded."

This rule specifies those statutes that were superseded by adoption of the Wyoming Rules of Evidence, and § 1–12–102 is not included within its purview. We perceive this as an obvious intent on the part of the legislature to continue the vitality of § 1–12–102 as a rule of law. Once again, we must look to the language of a statute in order to discern intent, and if the language clearly expresses that intent, we need not look any further. *Oroz v. Hayes*, supra; *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977). The Wyoming Rules of Evidence do not as a matter of course act in any way to supersede the effect of § 1–12–102.

### DID THE APPELLANT SATISFY THE CORROBORATION REQUIREMENT OF § 1–12–102, W.S. 1977?

■ The major requirement of § 1–12–102 is that if the adverse party testifies, as was done in this case, then in order for a judgment to lie in his favor, the adverse party must corroborate his testimony. Succinctly stated, the question now becomes whether the testimony of Mr. Federer of Consolidated was, by itself, sufficient corroboration in support of the counterclaim. The trial judge in his letter opinion found that it was not, and we agree.

The only evidence produced in favor of Consolidated's counterclaim was the testimony of Mr. Federer, the appellant's president. At the trial he testified, over objection, to the various terms of the agreement between Consolidated and Mr. Smith, and also to the damages he had suffered as a result of Mr. Smith's conduct and untimely death. However, no documentary evidence of any kind was produced in support of the counterclaim. Generally, to be corroborative under a statute like ours, the evidence

offered must be such that it would support or tend to support, in some degree at least, some of the material issues of the claim which are testified to by the witness whose evidence is sought to be corroborated. Annotation, 21 A.L.R.2d 1013, 1018. The required corroboration can occur from any competent witness or any other legal source. 21 A.L.R.2d at 1019.

■ Although we have never had the opportunity to rule upon the corroboration requirement of § 1–12–102, many states with similar "dead man's statutes" have. One such state is New Mexico and although they have repealed[4] their dead man's statute, since it was so similar to our § 1–12–102, we consider their case law persuasive. In *Wallace v. Wanek*, 81 N.M. 478, 468 P.2d 879 (1970), the plaintiff tried to prove a claim against deceased for wrongfully using plaintiff's car as collateral for a loan, by his own testimony alone. There the New Mexico Court of Appeals held that plaintiff's argument that his testimony was corroborated due to a failure of the deceased's estate to produce contrary evidence was not valid since the burden of corroboration is on the adverse party who is testifying and not on the deceased's representatives. 468 P.2d at 881. The plaintiff's testimony alone in that case did not amount to corroboration under the New Mexico "dead man's statute." In another case, the Supreme Court of New Mexico held that plaintiff's introduction of profit sheets and testimony of persons in charge of compiling company records was enough to corroborate plaintiff's claim on an oral agreement made with the deceased. *Lee v. Gruschus*, 77 N.M. 164, 420 P.2d 311 (1966). These two cases exemplify the general rule that under a "dead man's statute" such as our § 1–12–102, the testimony of the adverse claimant alone is not sufficient to satisfy the corroboration requirement of the statutes. See generally 21 A.L.R.2d 1041, § 22.[5] However, as indicated by *Lee v. Gruschus*, su-

---

4. The New Mexico statute formerly codified as § 20–2–5 NMSA 1953 was repealed in 1973.

5. For other similar holdings see: *Kingan & Co., Limited v. Estate of Burns*, 104 Ill.App. 661

(1902); *Floyd v. Towndrow*, 51 N.M. 193, 181 P.2d 806 (1947); *In re Swank's Estate*, 163 Or. 367, 97 P.2d 723 (1940); *Trevillian v. Bullock*, 185 Va. 958, 40 S.E.2d 920 (1947).

pra, corroboration can come from other competent witnesses, or other legal sources such as deeds, records, or reports.

Since Consolidated in the present case failed to produce any evidence other than Mr. Federer's testimony in relation to its claim under an oral agreement, the terms of which were admittedly unknown to Mrs. Smith, we hold that Consolidated failed to produce the requisite corroboration required by § 1–12–102.

■ Consistent with this holding we also expressly overrule the test we set up under our old "dead man's statute" in *Wilson v. Martinez*, Wyo., 301 P.2d 785, 803 (1956), since that statute was designed to exclude the testimony of witnesses, and we have already held in this case that § 1–12–102 does away with such an approach. The test is now one of corroboration rather than one of competency.

Affirmed.

ROONEY, Justice, dissenting, with whom RAPER, Justice joins.

I would hold that the trial court *did* err as a matter of law by applying § 1–12–102, W.S.1977 [1] (hereinafter referred to as "the statute"), to the facts of this case. Accordingly, I would reverse and remand the case for a new trial.

This action was instituted on a *partnership* claim against appellant. The judgment was in favor of a *partnership* on a quantum meruit count. Appellant's counterclaim was against a *partnership* and was based on an alleged contract with a *partnership*.

If the word "person" in the statute does not include a partnership, the statute should not be applied to this case inasmuch as the action then would not be "by or against a person" as required by such statute.

But the section should not be applied to the facts of this case, even if the word "person" in the statute does include a partnership, inasmuch as the partnership entity is *not* "incapable of testifying" as the statute conditions its applicability.

The majority opinion agrees with the analysis of the trial court which results in the determination that the word "person" as utilized in the statute is defined with reference to § 8–1–102(a)(vi), W.S.1977 [2] and includes a partnership. If so, the partnership had Frank Smith and Barbara Smith as partners, and either one of them could legally testify for and on behalf of the partnership. Since Frank Smith is dead, he could not actually so testify, but Barbara is alive and can do so.

"Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner." Section 17–13–304, W.S.1977.

"An admission or representation made by any partner concerning partnership af-

1. Section 1–12–102, W.S.1977 provides:

"In any action or suit by or against a person who from any cause is incapable of testifying, or by or against a trustee, executor, administrator, heir or other representative of the person incapable of testifying, no judgment or decree founded on uncorroborated testimony shall be rendered in favor of a party whose interests are adverse to the person incapable of testifying or his trustee, executor, administrator, heir or other representative. In any such action or suit, if the adverse party testifies, all entries, memorandum and declarations by the party incapable

of testifying made while he was capable, relevant to the matter in issue, may be received in evidence."

2. Section 8–1–102(a)(vi), W.S.1977 provides:

"(a) As used in the statutes unless the legislature clearly specifies a different meaning or interpretation or the context clearly requires a different meaning:

    *      *      *      *      *

"(vi) 'Person' includes an individual, partnership, corporation, joint stock company or any other association or entity, public or private."

fairs within the scope of his authority as conferred by this act [§§ 17–13–101 to 17–13–615] is evidence against the partnership." Section 17–13–303, W.S.1977.

The partnership entity was in existence for the purposes of this case although the partnership was dissolved by the death of Frank Smith. Section 17–13–603(a)(iv), W.S.1977.

"On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Section 17–13–602, W.S.1977.

Whether or not Frank Smith actually communicated to Barbara Smith the details of the partnership's arrangement with appellant is not pertinent insofar as the applicability of the statute to this case is concerned. He "reasonably could and should have" done so. Section 17–13–304, W.S. 1977, supra. Whether or not the testimony of appellant's officer relative to the alleged oral contract is sufficiently corroborated by the fact of partial performance by the partnership under some arrangement and by timely performance and payment for similar work in the past is likewise not pertinent if the statute is not applicable to this case. We should not underestimate the ability of a jury or of the court acting as a fact finder to determine the true circumstances of the matter with proper allowances for the missing testimony of one of the partners of appellee. In allowing the testimony of appellant's officer and of Barbara Smith and of others having information material to the issues, there will no longer be an inconsistency between allowing a recovery against appellant on a quantum meruit claim resulting from work performed under some sort of an understanding while denying consideration of appellant's counterclaim arising out of the same understanding.